**Ronald L. THOMPSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 83–307.**

District of Columbia Court of Appeals.

Submitted Feb. 8, 1984.

Decided Feb. 28, 1984.

Michael A. Stern, Washington, D.C., appointed by the court, was on the brief for appellant.

Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, and Michael W. Farrell, Judith Hetherton, Robert J. Behm, and Daniel M. Cisin, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN, PRYOR and ROGERS, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant of possession of cocaine, D.C.Code § 33–541(d) (Supp. 1983),[1] and the trial court sentenced him to eighteen months' imprisonment. On appeal, he argues that the trial court erred in refusing to permit questioning of the police witness on the exact location of the obser-

---

1. Formerly D.C.Code § 33–541(c). *See* D.C.Law No. 4–166, 30 D.C.Reg. 1082 (1983).

vation post from which the officer witnessed the transaction. We affirm.

Metropolitan police officer Richard Watkins testified at trial that he had observed appellant through binoculars from his concealed observation post at 14th and V Streets, N.W. According to Watkins, he first saw appellant watching police make an arrest. Appellant dropped a small object to the ground in a tree box, then walked away and sat down. After the police had left, appellant retrieved the object and placed it in his coat sleeve. When people on the street yelled a warning that the police were once again approaching, appellant removed a small shiny object from his sleeve and placed it behind a red milk crate. Another officer, directed to the milk crate by Watkins, almost immediately retrieved a package containing 21 tinfoil packets from behind the crate. Chemical analysis revealed that the substance in the packets was cocaine.

Appellant contends that the trial court's refusal to allow defense counsel to question Watkins about the exact location of the observation post was reversible error. Watkins testified that the post was approximately 100 feet from appellant and 50 feet from the ground. He refused to say whether it was across the street from appellant, and the court did not allow questions attempting to pinpoint the exact location. Counsel objected, saying he did not know whether there were trees in the area. The judge indicated that counsel could cross-examine as to the existence of obstructions. Counsel evinced skepticism about the reliability of the information he could obtain in this manner but was overruled. Counsel then continued the cross-examination on other lines and subsequently declined the opportunity, offered by the trial court, to conduct further nonspecific cross-examination as to the officer's ability to observe.

After both sides had rested, counsel requested the court to make an *in camera* evaluation of the need to reveal the location of the observation post. At that time, he pointed out that there were trees in the area and that the officer's angle of vision might have prevented him from observing all of appellant's activities. The trial court denied the request, indicating that counsel's failure to continue the cross-examination precluded any further inquiry.

We have held that, in the context of a pretrial suppression hearing, the government has a qualified privilege to withhold the exact location of an observation post. *Hicks v. United States,* 431 A.2d 18, 19 (D.C.1981). In that context, the public has an interest in protecting legitimate police surveillance. *Id.* at 21. The defendant's interest in suppressing evidence seized without probable cause also arises from a societal interest: discouraging improper police conduct. *See Davis v. Mississippi,* 394 U.S. 721, 724, 89 S.Ct. 1394, 1396, 22 L.Ed.2d 676 (1969). Thus, the trial court's decision whether to order disclosure of the surveillance location at a suppression hearing balances one societal interest against another.

At the trial stage, a different interest entirely—the defendant's personal interest in avoiding wrongful conviction—must be balanced against the same governmental interest: protection of surveillance. Because an important substantive right of the defendant is now at stake, the result of the balancing process may be different at the trial stage from what it would have been at the pretrial stage. *See Hicks, supra,* 431 A.2d at 22.

We conclude, however, that the qualified privilege to withhold the exact location of an observation post may, under some circumstances, justify the court's refusal to allow cross-examination on that point at trial. To overcome the privilege, a defendant "should ordinarily show that he needs the evidence to conduct his defense and that there are no adequate alternative means of getting at the same point." *United States v. Harley,* 221 U.S.App.D.C. 69, 71, 682 F.2d 1018, 1020 (1982). The trial court should then balance the defendant's interest in disclosure against the government's interest in continued secrecy and rule in accordance with " 'the fundamental

requirements of fairness.'" *Id.* (quoting *Roviaro v. United States,* 353 U.S. 53, 60, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957)).

Here, appellant failed to carry his initial burden of showing that the evidence was needed for his defense. At the time of his initial request for disclosure, defense counsel offered no showing that there was any vantage point in the relevant area that would not permit a clear view of appellant's activities. Defense counsel, while raising a question as to whether there were trees that might have obstructed Officer Watkins' view, then acknowledged that he did not know whether there were any trees on the block. Nor did he suggest that the angle at which appellant's activities would have been viewed from some possible surveillance locations would have rendered some of them unobservable. In fact, counsel declined to continue a line of questioning that might have elicited some of the relevant information from the witness. In the absence of any showing of defense need for the information, the trial court properly refused to permit cross-examination on the exact location of the observation post.

Although counsel, after both sides had rested, attempted to urge relevant grounds for disclosure (now saying there were trees in the area) and to request an *in camera* hearing on the issue, *see Hicks, supra,* 431 A.2d at 22 n. 2, the trial court was well within its discretion in refusing to entertain those arguments, since counsel had failed to raise them at the time of the original request for disclosure and had declined to continue his cross-examination of Watkins about his vantage point after the court's initial denial of his disclosure request. *See Sellars v. United States,* 401 A.2d 974, 978 (D.C.1979) (determination to reopen case within sound discretion of trial court).

*Affirmed.*