John H. JENKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 86–70.

District of Columbia Court of Appeals.

Argued Jan. 21, 1988.
Decided May 4, 1988.

James R. Klimaski, Washington, D.C., for appellant.

Sharon M. Collins, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, and Michael W. Farrell and N. Paul Patterson, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN, TERRY, and STEADMAN, Associate Judges.

FERREN, Associate Judge:

A jury convicted John H. Jenkins of possession with intent to distribute heroin. D.C. Code § 33–541(b)(2)(A) (1987). Judge Salzman sentenced him to four to twelve years of imprisonment. In seeking reversal of his conviction, Jenkins alleges that the trial court erred in refusing (1) to require disclosure of the location of a police observation post and (2) to question the entire venire panel regarding possible bias in favor of police testimony. We disagree with his first contention, but, finding merit in his second argument, we reverse and remand for a new trial.

## I.

The government introduced evidence showing that Metropolitan Police Officers James Starliper and Jay Wendell, from a covert observation post, observed Jenkins apparently selling narcotics at 1103 O Street, N.W. at about 12:10 a.m. on June

23, 1984. They radioed a description, and Officer Duayne Beuthe arrested Jenkins within five minutes. Officer Perry Caldwell discovered a film canister containing heroin within 30 to 50 feet from the place of arrest. Officers Starliper and Wendell had observed Jenkins using the canister in transactions immediately before his arrest. The government's case consisted exclusively of the testimony of police officers: those involved in the observation and arrest, as well as a narcotics expert. Jenkins challenged the government's account with an alibi defense.

At trial, before the *voir dire* of the jury panel, defense counsel requested the court to ask the entire venire panel whether anyone "would give more weight to the testimony of a police officer." The court declined. Instead, the court indicated it would ask that question only of the prospective jurors "who [are] police officer[s]" but would instruct the jury, after the close of all the evidence, "not [to] give more weight to the testimony of a police officer."

At the *voir dire*, which the trial court itself conducted, the court described the offense charged, then asked all the prospective jurors if they had heard about the incident; if any of them had special familiarity with the immediate area of the alleged offense; if they were acquainted with the prosecutor, defense counsel, or defendant; if they had strong feelings about drugs that would prevent them from "decid[ing] this case fairly and impartially, on the evidence you hear and the instructions of law which the Court will give"; if they had reservations about sitting in judgment against another person such that they would be unable to decide the case based on the evidence and the law as instructed by the court; if, in the previous five years, they or their close friends or relatives had been witnesses to crimes, victims of crimes, or accused or convicted of crimes; if any in this group had legal training; and if any in the same group had been "employed by any law enforcement agency," defined as a "police force in and out of the District of Columbia, special police officers, prosecutors, corrections officers, someone in the Sheriff's Department, someone in the De-

partment of Justice, other than the individual who has already disclosed that to us, someone in the Marshal's Service, Sheriff's Department, Internal Revenue Service, Secret Service or any other law enforcement agency."

One person employed by the Metropolitan Police Department as a crossing guard responded affirmatively to this last question, and the following dialogue took place:

THE COURT: Do you think that because you are a crossing guard you'd be inclined to believe the testimony of someone else in the law enforcement business more than anyone else, just because they're a police officer?

THE JUROR: No.

THE COURT: Could you be fair and impartial?

THE JUROR: Yes, I would.

The court conducted this questioning from the bench while the prospective juror stood at her seat. Consequently, their discussion could be heard by everyone in the courtroom.

As promised, the trial court, at the end of trial, instructed the jury on the proper treatment of police testimony:

Now police officers testified in this case; several of them. A police officer's testimony is to be considered by you just like the testimony of any other witness. And in evaluating the credibility of any of these police officers, the believability of them, you should use the very same guidelines that you would apply to the testimony of any other witness. In no event should you give either greater or lesser belief to the testimony of a witness simply because the witness is a police officer.

On the first day of trial, defense counsel implied that he might wish to request disclosure of the location of the police observation post, "since that is where all the observations were made from and all of the identifications were made from." Counsel also wanted "to determine the distance of the identification." The government, while professing "no objection to giving information such as distance, clarity of view, lack

of obstructions, angle of sight, line of sight," and the like, contended it was not required to disclose the location. The court agreed with the government, citing as authority *Thompson v. United States*, 472 A.2d 899 (D.C.1984). It ruled that, absent some foundation or showing of necessity, the defense may not discover the precise location of the observation post.

Defense counsel adduced evidence that the observation post was diagonally across the street from Jenkins' transactions; that there were light posts, trees, and parked cars in the area (but these had not obstructed the officers' view); and that the officers, one with binoculars and the other without, had observed the transaction from 200 to 250 feet away. On the second day of trial, defense counsel formally requested the court to order the government to reveal the observation post. He argued that the police testimony about Jenkins' observed activities was incredible, that one officer testified about obstacles, and that nondisclosure had restricted Jenkins' right to cross-examination. The court denied the request because the defense failed to demonstrate necessity, as required by *Thompson*, to overcome the government's conditional privilege to maintain secrecy. The court noted that the testimony indicated a well-lighted street, good visibility, and, contrary to defense counsel's assertion, no obstruction.

## II.

■ Jenkins alleges on appeal that the trial court erred in refusing to require disclosure of the observation post. We disagree. In *Thompson*, 472 A.2d at 900, we noted that the government's qualified privilege, at a suppression hearing, to withhold the exact location of an observation post, *Hicks v. United States*, 431 A.2d 18, 19 (D.C.1981), also applies at the trial stage. In order to overcome this qualified privilege, the defense must show there was some "vantage point in the relevant area that would not permit a clear view of appellant's activities." *Thompson*, 472 A.2d at 901. While Jenkins produced evidence of light posts, trees, and cars in the area, he made no positive showing that these could

have precluded observation of his activities. "Nor did he suggest that the angle at which appellant's activities would have been viewed from some possible surveillance locations would have rendered some of them unobservable." *Id.* Consequently, the trial court did not err in ruling that, based on the evidence, the defendant's interest in avoiding wrongful conviction did not overcome the government's interest in protecting surveillance and, thus, that the location of the observation post need not be disclosed.

## III.

Jenkins also argues that the trial court erred in failing, upon defense request, to inquire of the full panel of prospective jurors whether they would believe the testimony of a police officer more readily than that of other persons. He contends that where, as here, the government's case relies exclusively on the testimony of police officers, and where the defense challenges their credibility, the court's refusal to honor this request was an abuse of discretion requiring reversal of the conviction.

■ The purpose of *voir dire* is to allow the parties to satisfy themselves of an impartial jury, *Harvin v. United States*, 297 A.2d 774, 777–78 (D.C.1972), by affording " 'a full and fair opportunity to expose bias or prejudice on the part of the veniremen.' " *Glymph v. United States*, 490 A.2d 1157, 1162 (D.C.1985) (quoting *United States v. Robinson*, 154 U.S.App.D.C. 265, 269–70, 475 F.2d 376, 380–81 (1973)). The trial court has broad discretion in conducting *voir dire*, however, and its rulings will not be disturbed on appeal " 'absent an abuse of discretion and substantial prejudice to the accused....' " *Cordero v. United States*, 456 A.2d 837, 841 (D.C. 1983) (quoting *Khaalis v. United States*, 408 A.2d 313, 335 (D.C.1979), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980)). In sum, the trial court's discretion over the conduct of *voir dire* is subject to " 'the essential demands of fairness.' " *Cordero*, 456 A.2d at 841 (quoting *Aldridge v. United States*, 283 U.S. 308,

310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931)); *Robinson,* 154 U.S.App.D.C. at 269, 475 F.2d at 380; *Brown v. United States,* 119 U.S.App.D.C. 203, 204, 338 F.2d 543, 544 (1964); *Sellers v. United States,* 106 U.S. App.D.C. 209, 210, 271 F.2d 475, 476 (1959) (per curiam).

■ A defendant's right to an adequate *voir dire* is grounded in the sixth amendment guarantee of an impartial jury. *Rosales–Lopez v. United States,* 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981) (plurality opinion) (where defendant convicted of aiding fellow Mexicans gain illegal entry into United States, trial court's failure to ask *voir dire* question about prejudice against Mexicans not reversible when court asked about bias against aliens in general). Appellant need not prove a constitutional violation, however, and does not purport to do so here. He relies on authorities demonstrating that an appellate court should reverse trial court rulings at *voir dire* not only for unconstitutional abuse of discretion but also for failure to satisfy a

nonconstitutional standard of fairness—a standard developed by the appellate court in exercising its supervisory power over the administration of criminal justice. *Id.* at 190, 101 S.Ct. at 1635; *see Boone v. United States,* 483 A.2d 1135 (D.C.1984) (en banc) (trial court's refusal to allow defendant to approach bench where prospective jurors were being examined on *voir dire* violated defendant's right under Super.Ct.Crim.R. 43(a) to be present at all stages of his trial).[1]

In outlining a nonconstitutional standard for abuse of discretion at *voir dire* in the federal courts when racial or ethnic prejudice is at issue, the Supreme Court noted that the determination

> does not depend upon a comparison of the concrete costs and benefits that its application is likely to entail. These are likely to be slight: some delay in the trial versus the occasional discovery of an unqualified juror who would not otherwise be discovered. There is, however, a more significant conflict at issue here—

1. In *Boone v. United States,* 483 A.2d 1135 (D.C. 1984) (en banc), the lead opinion, focusing on peremptory challenges, premised reversal on a trial court rule but noted its "constitutional underpinnings." *Id.* at 1139. A majority of the court also subscribed to a concurring opinion, focusing on challenges for cause, that relied on constitutional rights to due process and a fair trial. Thus, in *Boone,* the rule granting defendants the right to be present at the bench during *voir dire* has both constitutional and nonconstitutional bases. This struggle to sort out constitutional and nonconstitutional requirements governing *voir dire* reflects a similar development in the Supreme Court. In *Ristaino v. Ross,* 424 U.S. 589, 598, 96 S.Ct. 1017, 1022, 47 L.Ed.2d 258 (1976), which concerned violent crimes by a black man against a white security guard, the Court held that, in contrast with the circumstances in *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), the Constitution did not require the trial court to ask the venire panel a requested question about racial prejudice because the circumstances "did not suggest a significant likelihood that racial prejudice might infect Ross' trial." Later, however, in *Rosales–Lopez v. United States,* 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981), the Supreme Court stressed the "wiser course" noted in *Ristaino,* 424 U.S. at 597 n. 9, 96 S.Ct. at 1022 n. 9, and elaborated a nonconstitutional standard, under its "supervisory power over the federal courts," for requiring *voir dire* "questions directed at the discovery of racial prejudice." *Rosales–Lopez,* 451 U.S. at 190, 101 S.Ct.

at 1635. *Rosales–Lopez* announced a supervisory rule for the federal courts: the trial court must permit an inquiry of the venire panel into racial or ethnic prejudice if there is "a 'reasonable possibility' that racial prejudice would influence the jury." 451 U.S. at 192, 101 S.Ct. at 1636. The Supreme Court called this formulation consistent with the application and discussion of the court's supervisory power, respectively, in *Aldridge v. United States,* 283 U.S. 308, 314, 51 S.Ct. 470, 473, 75 L.Ed. 1054 (1931), and *Ristaino,* 424 U.S. at 597 n. 9, 96 S.Ct. at 1022 n. 9.

As we understand the Supreme Court, therefore, the test under the nonconstitutional rule of the federal courts governing *voir dire* as to racial and ethnic prejudice—the "reasonable possibility standard," *Rosales–Lopez,* 451 U.S. at 192, 101 S.Ct. at 1636—is stricter than the standard applied for constitutional purposes, namely the "significant likelihood" test, *Ristaino,* 424 U.S. at 596–98, 96 S.Ct. at 1021–22, on which we relied, for example, in *Cordero v. United States,* 456 A.2d 837 (D.C.1983). We recognize that *Aldridge, Ham, Ristaino,* and *Rosales–Lopez* dealt only with *voir dire* as to racial and ethnic prejudice and that we now exercise our supervisory power to apply this nonconstitutional, "reasonable possibility" standard to *voir dire* for bias as to police testimony. We do not deal with questions about how far this particular standard extends into other contexts.

one involving the appearance of justice in the federal courts.

*Rosales–Lopez,* 451 U.S. at 190, 101 S.Ct. at 1635. The Court identified a conflict between two competing concerns: (1) a concern for the justice system that the very asking of prospective jurors about their biases could create the appearance that outcomes in court turn on unfounded bias, and (2) a concern for the individual "criminal defendant's perception that avoiding the inquiry does not eliminate the problem, and that his [or her] trial is not the place in which to elevate appearance over reality" by refusing to ask about prejudices that could prevent a just outcome. *Id.* at 191, 101 S.Ct. at 1635. The Court's solution to this conflict is to allow the defendant to determine whether he or she would prefer such an inquiry. *Id.* at 191, 101 S.Ct. at 1635. The trial court's decision to refuse a requested inquiry will be reversible error if the circumstances indicate a "reasonable possibility" that the specified prejudice may have influenced the jury. *Id.*

Although the Supreme Court in *Rosales–Lopez* dealt exclusively with the question of racial and ethnic prejudice, the "reasonable possibility" standard effectively sums up the earlier caselaw of this jurisdiction on *voir dire* for bias attributable to police testimony. Our courts have held that, when the government's case consists entirely of police testimony challenged by the defense, failure to question prospective jurors, upon request, about "possible disqualification" for bias regarding such testimony may require reversal of a conviction depending on the impact of that testimony on the case as a whole. *Harvin,* 297 A.2d at 777–78. In *Harvin,* for example, with receipt of stolen property and unauthorized use of a vehicle at issue, police officer testimony was likely to embrace virtually the entire case for the prosecution. *Id.* at 777. Furthermore, the defense theory of the case sharply controverted the police testimony. *Id.* Defense counsel, who was conducting *voir dire,* sought permission to ask the venire members whether they would be likely to give greater credence to testimony of a police officer. *Id.* at 776. The trial court declined to allow the ques-

tion, noting—as the trial court did in the present case—that it would instruct the jury on that issue in its final instructions. *Id.* We reversed, ruling that the trial court, by refusing that question, denied the defense its right to be satisfied of an impartial jury. *Id.* at 777–78. In so holding, we relied on *Sellers* and *Brown.*

In *Sellers,* the trial judge, who alone questioned the venire panel, refused a defense request to ask whether "any of the jurors [is] inclined to give more weight to the testimony of a police officer *merely because he is a police officer* than any other witness in the case." 106 U.S.App.D. C. at 210, 271 F.2d at 476 (emphasis in original). The court of appeals reversed, ruling there was an abuse of discretion because police officer testimony "was virtually the entire case for the prosecution," and the *voir dire* had not been unduly protracted. *Id.* at 210–11, 271 F.2d at 476–77.

In *Brown,* the only prosecution witnesses were military police officers and Metropolitan Police officers. 119 U.S.App.D.C. at 204, 338 F.2d at 544. The defense presented evidence that the defendant's companion at the time of the alleged assault was the only perpetrator. *Id.* The trial court conducted the *voir dire* and declined to honor a defense request that it ask the prospective jurors, "Would you give greater credence to the testimony of a law enforcement officer merely because he is an officer as compared to any other witness?" *Id.* The court of appeals reversed on the authority of *Sellers,* which it construed to establish that

> when important testimony is anticipated from certain categories of witnesses, whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination is not only appropriate but should be given if requested.

119 U.S.App.D.C. at 205, 338 F.2d at 545 (quoted in *Harvin,* 297 A.2d at 777).

■ A trial court's failure, upon request, to ask prospective jurors if they are predisposed to accord more or less credence to police officer testimony is not always reversible error. *Brown,* 119 U.S.App.D.C. at 205, 338 F.2d at 545. The answer depends upon "the degree of impact which the testimony in question would be likely to have had on the jury and what part such testimony played in the case as a whole." *Id.* The United States Court of Appeals for the Ninth Circuit, citing *Brown* among other authorities, pointed out that the factors for determining whether reversal is warranted when a trial court refuses to ask about police credibility include:

> the importance of the government agent's testimony to the case as a whole; the extent to which the question concerning the venireperson's attitude toward government agents is covered in other questions on voir dire and on the charge to the jury; the extent to which the credibility of the government agent-witness is put into issue; and the extent to which the testimony of the government agent is corroborated by non-agent witnesses.

*United States v. Baldwin,* 607 F.2d 1295, 1298 (9th Cir.1979). We believe the *Baldwin* criteria, predating *Rosales–Lopez,* nicely elaborate what the Supreme Court intended by its "reasonable possibility" standard.

■ When assessed by reference to *Harvin, Sellers, Brown,* and *Baldwin,* the trial court's denial of Jenkins' requested *voir dire* question must be held reversible error. Police testimony constituted the entire case for the prosecution; there were no "non-agent witnesses" to corroborate that testimony. Further, Jenkins contested the testimony both by presenting an alibi defense and by challenging the police witnesses' ability to observe the alleged drug transaction.

Additionally, the potential bias was not covered by other questions. The court's question about the prospective jurors' ability to be impartial in the drug context was not sufficient to disclose bias regarding police testimony. Similarly, in asking whether the prospective jurors had friends or family who recently had been witnesses to, victims of, or accused or convicted of a crime, the trial court did not address the particular bias Jenkins sought to elicit.

Finally, by addressing the requested question in open court to the one prospective juror who disclosed a prior affiliation with the police, the trial court did not ferret out the only possible bias within the venire panel. Such selective questioning is premised on an assumption that it is not "reasonably possible" for prospective jurors without police connections to be influenced by a bias for or against the police. We find nothing in the record or in common experience to support such an assumption. A *voir dire* question directed at a single prospective juror, even though posed in open court and within earshot of all the venire members, is not sufficient to assure impartiality among the rest of the venire members to whom the question was not addressed and who, of course, did not respond.

■ The trial court did instruct the jury that it should assess the credibility of police witnesses no differently from its assessment of other witnesses. While that instruction may have reduced the potential for harm, a jury instruction at the end of trial cannot be a substitute for a *voir dire* question before trial. A question on *voir dire* will facilitate more informed use of peremptory challenges, as well as challenges for cause, altogether excluding biased jurors. *Brown,* 119 U.S.App.D.C. at 205, 338 F.2d at 545. In contrast, a jury instruction, at best, can neutralize the biases of participating jurors. As in *Harvin,* therefore, we conclude that, under the circumstances, the jury instruction on the credibility of police witnesses was not sufficient to make the error at *voir dire* harmless.[2]

2. The government relies on interpretations of *Brown v. United States,* 119 U.S.App.D.C. 203, 338 F.2d 543 (1964), by several federal circuit courts of appeal to argue that refusal to pose the question requested in this case does not constitute reversible error. *Therrien v. Vose,* 782 F.2d

## IV.

Because we conclude that the trial court abused its discretion in failing, upon request, to ask all the prospective jurors at *voir dire* whether any would tend to give either more or less credence to testimony of police officers, we must reverse the judgment and remand the case for a new trial.

*So Ordered.*