Julian C. BUENO, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CF–1759.

District of Columbia Court of Appeals.

Submitted March 16, 1999.
Decided Nov. 9, 2000.

Elizabeth Figueroa, appointed by this court, was on the brief, for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher, Mary–Patrice Brown, Ricardo J. Nunez, and Emory V. Cole, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ and REID, Associate Judges, and MACK, Senior Judge.

MACK, Senior Judge:

After a trial by jury, appellant Bueno was convicted of the unlawful distribution of a controlled substance (cocaine) in violation of D.C.Code § 33–541(a)(1), and unlawful possession with intent to distribute a controlled substance (cocaine) in violation of D.C.Code § 33–541(a)(1). In this appeal, he urges that the trial court erred in denying his "Motion to Compel Location of a Police Observation Post."

## I.

### *Pretrial Hearing*

Prior to trial, appellant's counsel filed a "Motion to Compel Location of Observation Post." At the pretrial hearing on the motion, Metropolitan Police Officer Holiday Atkins testified that on July 17, 1995, at 6:30 p.m., he was stationed (with a

partner) inside an elevated observation post in a mostly residential, but partly business, neighborhood known for drug transactions. Using 10 by 50 binoculars focused through a window, Atkins observed appellant engage in two separate street transactions wherein he exchanged objects and received money. The first transaction involved an unknown Hispanic man; after conversing with this male, appellant was seen to walk to a nearby electrical box, retrieve a brown piece of paper, remove an object from the paper, and give it to the male in exchange for currency. Officer Atkins, believing the transaction to have been a drug sale, radioed a description of the Hispanic man to an arrest team on the ground but the team failed to locate the suspect.

A similar transaction occurred a short time thereafter when Officer Atkins saw appellant encounter one Lazaro Ugarte.[1] The officer radioed a description of Mr. Ugarte to the arrest team which apprehended Ugarte within minutes, and recovered a clear ziplock bag containing a white, rock-like substance later identified as crack cocaine. After receiving confirmation from the arrest team that Ugarte was in custody, the observation officers radioed a description of appellant (as wearing blue jean shorts, white tennis shoes with red strings, and a shirt only over his back), and he was apprehended. Officer Atkins watched the arrest from his post and confirmed to the arrest team that appellant was the individual he was seeking. The arrest team was directed to search the bushes where appellant had been seen placing the brown paper. The team recovered the paper which contained six ziplock bags of a white rock-like substance which in turn tested positive for cocaine. The ziplock bags found in the brown paper matched the one recovered earlier from Mr. Ugarte.

On cross-examination, Officer Atkins testified that his observation post was presently used and had been so for a number of times. Met with the government's opposition to disclosure, defense counsel suggested to the government that she would be willing to take an oath not to disclose the location in order that she could prepare for trial. Government counsel rejected the offer and reminded defense counsel that she would have the opportunity to cross-examine at trial. The motion was denied.

### The Trial

At trial, before a different judge, the government presented the testimony of Officer Stephanie Garner who had been stationed in the observation post with Officer Atkins. She explained that the post was used in this partly residential and business corridor to protect its citizens. She noted that it was Officer Atkins who had used the binoculars and that the two of them had been at an elevated location less than 75 feet away from the scene of the crime. On cross-examination, she said that the distance was more than 25 feet but less than 75 feet, that she did not use the binoculars, and that she did not see any blocking trees or parked cars on that day.

Throughout the trial, defense counsel renewed her request for disclosure, explaining at one point that non-disclosure limited her ability to effectively cross-examine. The defense presented the testimony of an investigator who made several visits over the course of two years and opined that every location in the relevant area was in some way obstructed by walls, trees, buildings, porches or other barriers. He admitted that all of his observations were made from the street or porch levels.

The motion for disclosure was denied and appellant was convicted.

## II.

### A. *Observation Post Privilege*

██ Our court has held that the government has a qualified privilege to withhold

1. Mr. Ugarte pled guilty to possession of cocaine, was subsequently sentenced, and did not testify at appellant's trial.

information concerning the exact location of a hidden observation post, even where the eyewitness account of an officer situated in the post provides the sole basis for charges brought against the defendant at trial. *See generally Anderson v. United States,* 607 A.2d 490 (D.C.1992); *Carter v. United States,* 614 A.2d 913 (D.C.1992); *Thompson v. United States,* 472 A.2d 899, 900 (D.C.1984). This privilege was created judicially through analogous interpretations of *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the United States Supreme Court case that established a qualified privilege for the government to withhold the identity of undercover informants.[2] *See Anderson, supra,* 607 A.2d at 495.

■ The *Roviaro* court held that the government's privilege to withhold the identity of an informer is a qualified one, to be limited according to the fundamental requirements of fairness. "Where the disclosure of an informer's identity, or the contents of his communications, is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the privilege must give way." *Roviaro, supra,* 353 U.S. at 60–61, 77 S.Ct. 623. *Roviaro* outlined a balancing test to determine on a case by case basis whether the privilege to withhold an informer's identity should be upheld:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for *balancing* the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible signifi-

cance of the informer's testimony, and other relevant factors.

*Id.* at 62, 77 S.Ct. 623 (emphasis added).

In *Hicks v. United States,* 431 A.2d 18, 21–22 (D.C.1981), we held, relying on the *Roviaro* analysis, that the government has an analogous privilege to withhold the location of a hidden observation post:

> Law enforcement interests in surveillance positions are analogous to those concerning informants. If an observation location becomes known to the public at large, its value to law enforcement probably will be lost. The revelation, moreover, may jeopardize the lives of police officers and of cooperative occupants of the building. These potential consequences mandate the same qualified testimonial privilege regarding surveillance positions as the protection given to police informants.
>
> The question in each case, then, becomes whether fairness requires that the government's privilege yield to the defense right of cross-examination. Given the circumstances, the trial court must balance the public interest in legitimate criminal surveillance against the defendant's right to cross-examine government witnesses and exercise its sound discretion whether to permit withholding of the information.

■ The *Hicks* decision affirmed the government's qualified privilege to withhold the location of a hidden observation post at a pretrial hearing. This privilege was also found to exist at trial by our court in *Thompson,* "We conclude ... that the qualified privilege to withhold the exact location of an observation post may, under some circumstances, justify the court's refusal to allow cross-examination on that point at trial." [3] *Thompson, supra,* 472 A.2d at 900. Along with establishing the existence of the observation post privilege

**2.** The analogous description of the privilege as a "qualified" one, is well taken; *Roviaro,* in reversing the conviction of a defendant who had been denied disclosure of an informant's identity prior to trial, also opined that the trial court erred in denying a motion for a bill of particulars. *Roviaro, supra,* 353 U.S. at 65 & n. 15, 77 S.Ct. 623.

**3.** It is well established that because the defendant's interest is more substantial at trial than at a pretrial hearing, "the result of the balancing process may be different at the trial stage

at trial, *Thompson* also refined the test for determining when the privilege should be upheld, articulating two separate stages: a threshold showing of need for the information, followed by a balancing of competing interests. *See id.* at 900–01. The most current incarnation of this test is provided in *Anderson v. United States,* 607 A.2d 490, 496 (D.C.1992):

> Under our precedents, the determination whether disclosure of a concealed observation post shall be required proceeds in two stages. **First,** the defendant must make a threshold showing of need for the information; he must establish that he needs the evidence to conduct his defense and that there are no alternative means of getting at the same point. This threshold showing is required upon the prosecution's invocation of the privilege, and before the court explores the specifics of the government's countervailing interest (*e.g.,* whether the observation post is still in use, whether cooperating civilians remain in jeopardy, and similar considerations). The defendant's burden in making his initial showing of need is therefore *significantly more modest*

than his **second**-stage burden of establishing that, in spite of the possible peril to officers and civilians and the potential curtailment of a legitimate means of law enforcement arising in the particular case, disclosure should nevertheless be required. [Emphasis added; citations omitted.]

The two-part test presents strenuous and unambiguous guidelines concerning the observation post privilege. While the issue before us is whether disclosure by the government was properly denied on the facts of this case, there is an initial compelling question that we are duty bound to address. That compelling question is whether our test, evolving from *Roviaro,* is consistent with the fairness requirements of our Supreme Court or whether it is so stringent that it places the Sixth Amendment right of confrontation in peril.

**B.  *Threshold Showing of Need***

■  A defendant who has requested the precise location of a police surveillance post must first show that he needs the information to conduct his defense before any balancing test is applied.[4]  This

---

from what it would have been at the pretrial stage." *See Thompson, supra,* 472 A.2d at 900. However, in the instant case, it is unclear whether the trial court gave appropriate credence to this differing standard. The presiding judge at trial was not the same judge present at the pretrial hearing on the defendant's motion to compel disclosure of the observation post. During defense counsel's cross-examination of the observation post officer, the government objected, claiming that the judge was providing too much leeway. The court responded, "I'm going to count on the government to bring to my attention anything you feel is outside the scope of what was developed at the motions hearing ... as long as it stays within the framework of what was developed at the motion hearing I'm going to allow the question." Allowing the pretrial hearing to rigidly define the scope of questioning at trial would be an error because "a defendant's right of cross-examination is more limited at suppression hearings than at trials." *United States v. Raddatz,* 447 U.S. 667, 669, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). However, we do not address to what extent, if any, this harmed the effectiveness of

defense counsel's cross-examination of the officer.

4. One tool available to the trial court to help determine the defendant's need for disclosure in cases such as the instant case, is *in camera* review. We have encouraged trial courts to make liberal use of *in camera* review in past observation post cases, but we have never precisely addressed the standard for deciding when *in camera* review should be required. In *Carter, supra,* after praising the potential effectiveness of *in camera* review as a means of "reconciling the defendant's need for disclosure with the government's interest in maintaining the confidentiality of its observation posts," we refused to require an *in camera* hearing. *See Carter, supra,* 614 A.2d at 916. However, although we did not remand on the facts of that particular case, we did provide guidance for evaluating requests for *in camera* hearings in the future. Relying on *United States v. Zolin,* 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), a Supreme Court case which addressed the issue of *in camera* review in a different context, we

threshold test emerged from language in *Roviaro*, which states that the informant privilege must give way whenever disclosure is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." A defendant who cannot first demonstrate that an informer's identity is at least relevant and helpful will not be entitled to disclosure. *See Roviaro, supra,* 353 U.S. at 60–61, 77 S.Ct. 623.

The threshold requirements developed in our jurisprudence for demonstrating need in an observation post case far surpass the "relevant and helpful" standard of *Roviaro*. A higher threshold is not *per se* unjust in an observation post case because, although the precise location at the crime scene might not be divulged, the material witness is at least present in the court room and available for direct questioning. "For example, a police officer who declines to reveal the location of an observation post may readily be cross-examined on other matters. If the identity of an informant is withheld, however, the accused cannot examine him or her at all." *See Anderson, supra,* 607 A.2d at 495 n. 4. However, a threshold requirement that is too difficult to meet will risk turning the government's "qualified" privilege into one that is effectively absolute. Consider our case law in the District of Columbia. We do not know to what extent, if any, our trial judges in the past have held that a defendant has made an adequate showing of need for disclosure. However, we do know that in the sixteen years since our *Thompson* court established the observation post privilege at trial, not one defendant on appeal has succeeded in showing that he made an adequate showing of such need. What began as a comparatively modest requirement that disclosure of the identity of the informant is required if "relevant and helpful" or "essential to the fair determination of a cause," *see Roviaro, supra,* 353 U.S. at 60–61, 77 S.Ct. 623, has evolved into a seemingly insurmountable obstacle. For example, consider the following:

### Table of Observation Post Cases in the District of Columbia

| | |
|---|---|
| *Thompson v. United States* | "[A]ppellant failed to carry his initial burden.... [D]efense counsel offered no showing that there was *any* vantage point ... that would not permit a clear view of appellant's activities." *See Thompson, supra,* 472 A.2d at 901 (emphasis added). |
| *Jenkins v. United States* | "In order to overcome this qualified privilege, the defense must show there was *some* vantage point in the relevant area that would not permit a clear |

held that "the trial court should require a showing of a factual basis adequate to support the request for an *in camera* hearing." *See Carter, supra,* 614 A.2d at 916.

The *Zolin* case explored the question of when a court might be *allowed* to conduct an *in camera* review of potentially privileged evidence, and not when review should be *required*. But in *Carter*, we concluded that because the party requesting an *in camera* hearing failed to provide an adequate factual basis for the request, "the trial court did not abuse its discretion in *refusing* to hold an *in camera* hearing." *See Carter, supra,* 614 A.2d at 916. Whether the reverse would be true, namely, the conclusion that a trial court that refuses to conduct an *in camera* hearing in spite of a showing of a "factual basis adequate to support the request" *has* abused its discretion, was not presented on appeal in the instant case and is therefore not addressed here. Still, the *Zolin* court was careful to point out that, because *in camera* inspection "is a smaller intrusion ... than is public disclosure ... a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege." *Zolin, supra,* 491 U.S. at 572, 109 S.Ct. 2619 (citation omitted). Therefore, while we do not determine here whether the trial court should have conducted an *in camera* hearing in the instant case, we do note that the evidentiary showing required to compel an *in camera* hearing is considerably less than what is required to ultimately compel disclosure of an observation post.

view . . . ." *See Jenkins v. United States,* 541 A.2d 1269, 1272 (D.C.1988) (citation omitted; emphasis added).

| | |
|---|---|
| *Anderson v. United States* | 1. A showing that there was "some" vantage point that would not permit a clear view "standing alone, is [not] sufficient to demonstrate need." *Anderson, supra,* 607 A.2d at 496.<br>2. "We therefore hold that the defendant is obliged to show not only that there are locations in the area from which the view is impaired or obstructed, but also that there is some reason to believe that the officer was making his observations from such a location." *Anderson, supra,* 607 A.2d 497. |
| *Carter v. United States* | "Appellant Carter did make an effort to show that Officer Nitz had conducted his surveillance from an observation post from which the view was obstructed. Defense counsel sent an investigator to the scene at least twice . . . [and] came up with a theory of where the observation post was located, and counsel argued that the view from that spot was obstructed. . . . [T]he court characterized counsel's [theory] as to the location of the post as *very speculative."* *See Carter, supra,* 614 A.2d at 915, 916. |
| *United States v. Bueno* | Although the defendant proffered, and then offered [expert] testimony and photographs in an effort to show that every location in the relevant area was in some way obstructed from the vantage point of a hidden observation post, he nevertheless failed to demonstrate need. |

In each successive case, attorneys for the defense have employed progressively more creative and resourceful efforts to make the required showing of need. In *Thompson* and *Jenkins,* defense counsel failed to show that there was "some" vantage point that would have been obstructed. Counsel in *Anderson* succeeded in showing that "some" vantage points in the relevant area were obstructed, but failed to provide the court a reason to believe the officer was stationed in one of the obstructed locations. Counsel in *Carter* sent an expert investigator to the crime scene on at least two occasions. The expert developed a theory describing where the police observation post could have been located and provided evidence that such vantage point was obstructed. Our court supported the trial court's finding that the defense theory was "very speculative" and elected to uphold the government privilege. In the instant case before us, defense counsel also sent an expert to the crime scene. This investigator made sev-

*eral* visits over the course of two years and presented evidence that *every* location in the relevant area was in some way obstructed. Even had this incredible contention been plausible, it was not enough to demonstrate sufficient need.

With each case, from *Thompson* to the instant case, defense lawyers seem to have been subjected to a progressively higher threshold standard. With each case they have failed to meet that standard. *Carter,* our case with facts most similar to those of the instant case, candidly addresses the argument that the burden placed on defendants is perhaps too great:

[T]hat heavy burden is exactly what we intended in *Anderson:*

If . . . the officer unambiguously testifies that he was not in any of the impaired locations, and if his testimony to that effect is credited by the court, then it will ordinarily be difficult if not *impossible, absent other indicia of unreliability,* for the ac-

cused to sustain his threshold burden, for there will be no reason for the court to believe that the officer's view was obstructed.

*Carter, supra,* 614 A.2d at 916 (citing *Anderson, supra,* 607 A.2d at 497 (emphasis added)).

With some trepidation, we venture to suggest that the idea that the threshold showing might be "impossible" to achieve is counterintuitive. In outlining the two part test, the *Anderson* court defined the threshold burden as "significantly more modest" than the second stage balancing test. *See Anderson, supra,* 607 A.2d at 496. But, if the first stage test is ordinarily "impossible," how could the second stage be *more* difficult for the defendant to overcome?

Equally unclear is the concept that unless there is "other indicia of unreliability," there will be no reason for the court to believe that an officer's view was obstructed, and therefore no need for the defendant to learn the location of the observation post. *See id.* at 497. That could be tantamount to saying "absent evidence that an officer's testimony is unreliable, a defendant is precluded from discovering evidence that the officer's testimony is unreliable." This Hellerian [5] dilemma was expressly rejected by the District of Columbia Circuit in *United States v. Foster,* 300 U.S.App.D.C. 78, 81, 986 F.2d 541, 544 (1993):

> It is no answer to say, as the government does, that the defense failed to cast substantial doubt on the accuracy of [Sergeant] Clark's testimony. Creating such doubt would have been one of the objectives of cross-examination following revelation of the observation post.

Logically, a defendant with no *other* evidence of unreliability, would be utterly dependent on gaining evidence that the officer's point of view was in some way obstructed in order to make a case for mistaken identity. To deny a request for disclosure in such a case, without at least

applying the second stage balancing test, would be fundamentally unfair.

In addition to failing the fairness requirement of *Roviaro,* our threshold test creates a burden without a benefit. In cases where observation post privilege is claimed, the government commonly recognizes two concerns: (1) that disclosure of the surveillance post would jeopardize ongoing and/or future operations in that location, and (2) secrecy is necessary to safeguard private citizens who might be endangered by disclosure. These public concerns are fully protected by the "balancing of interests" tier of the *Anderson* test. The threshold requirement is at best a redundancy which burdens the defendant while advancing no independent countervailing interest. It effectively excludes evidence that, whether it ultimately benefits the defense or the prosecution, would significantly aid the trier of fact in determining the validity of witness testimony. This point was addressed in *Anderson:*

> The government concedes, and we agree, that evidentiary privileges, by definition, inhibit the production of potentially probative evidence. Recognition of such privileges is always, in some measure, in derogation of the search for truth.... [A] ruling in the government's favor not only reduces the relevant information available to the trier of fact, but also restricts in some measure the accused's opportunity to confront and cross-examine the witnesses against him.... [However,] certain narrowly defined evidentiary privileges have been found to be justifiable to protect specific and significant societal interests.

*Anderson, supra,* 607 A.2d at 495 (citation omitted).

The balancing test is more than adequate to safeguard the lives and welfare of citizens who aid police operations. This function is highly significant and upon sufficient evidentiary showing by the prosecution, can outweigh the defendant's right of

---

5. Joseph Heller, Catch–22 (1961).

cross-examination. There are no equivalent "significant societal interests" at stake in the threshold test and thus, no justification for that test to suppress potentially probative evidence.

## C.  *The Case for Remand*

As previously stated, precedent in our court weighs heavily in favor of the government's position. However, *Foster, supra,* 300 U.S.App.D.C. at 81, 986 F.2d at 544, the leading case on the issue of observation post privilege in the District of Columbia, would call for a different conclusion in the instant case. The basic factors of *Foster* are similar to those of this and other observation post cases. Sergeant Thomas Clarke observed a drug transaction from a hidden surveillance post. James Foster was arrested on the strength of the Sergeant's identification. To that end, the defense asked for disclosure of the observation post. The government's objection on the basis of observation post privilege was sustained and Foster was later convicted of possession. *Id.* at 79, 986 F.2d at 542.

In holding that the trial court's finding of observation post privilege was reversible error, the *Foster* court expressed a strong reliance on *Roviaro* and, unlike *Anderson* and *Carter,* indicated that where an officer's testimony plays a crucial role in a criminal trial, the defendant's right of cross-examination will often prevail.

> The more important the witness to the government's case, the more important the defendant's right, derived from the Confrontation Clause of the Sixth Amendment, to cross-examine the witness.... The defense understandably wanted to cross-examine [Sergeant] Clarke about his estimate of the distance between him and Foster and the angle of his view and his testimony that nothing blocked his line of sight. Without knowing the location of the observation post, the defense could not effectively probe the officer's memory or veracity about these subjects. The right of the defense to engage in such lines of inqui-

ry is at the heart of our system of criminal justice.

*Foster, supra,* 300 U.S.App.D.C. at 80–81, 986 F.2d at 543–44.

The *Foster* court also provided an indication of how it might apply the *Roviaro*-style balancing test in an observation post case where, as in this case and in *Foster,* the eyewitness account of an officer stationed in the post provided the sole basis for the charges. While a defendant seeking to prove that his right to cross-examination outweighed a tangible risk to citizens associated with an observation post would probably fall short, a defendant would likely prevail against the sole contention that disclosure of a surveillance post would render it useless in future operations.

> The government proposes ... that disclosing the observation post will destroy its usefulness in detecting criminal activity. The theory assumes that information revealed in court will become known on the street. Yet on the government's theory drug dealers already know from this case that the police can watch this particular area from a distance. After Foster's trial, only a complete fool would openly conduct a drug transaction on the parking lot or the basketball court.... A defendant's right to cross-examination cannot be circumscribed on such a basis.

*Id.* at 81, 986 F.2d at 544.

Two facts distinguish *Foster* from the instant case before us. First, in *Foster,* the officer admitted that the drug exchange took place inside a car, confirming an obstruction not present in our case. Second, one of the arresting officers being directed by Sergeant Clarke at the scene, initially (and accidentally) arrested someone other than Mr. Foster. This incident provides evidence of a lack of certainty not demonstrated by the witness in our case. *See id.* at 80, 986 F.2d at 543. These facts are significant, but they do not diminish the importance of *Foster*'s holding, and although the holding is not mandatory authority, it does seem to hold truer to the spirit of *Roviaro,* the original legal prece-

dent on which both courts rely, than our opinions in this area.

## III.

### *Conclusion*

Strict adherence to our precedents compels an affirmation of the trial court's decision in the instant case. Our holding in *Carter* recognized that the threshold requirement of need is intentionally high and in a case with facts similar to those of the instant case, affirmed the government's privilege to maintain the secrecy of its observation post. *Carter, supra,* 614 A.2d at 916. Defense counsel in the instant case did present more compelling evidence than in *Carter,* namely the testimony of a private investigator claiming that the view from *every* building in the relevant area was in some way obstructed. This evidence alone might have been adequate to compel a remand, but for one fatal flaw: The defense investigator made all of his observations from street or porch level, but the testifying officer divulged that she had been located on the second floor.

Because of this oversight, defense's investigator testimony in this case may not be adequate to compel reversal under our precedent. However, such facts do help illustrate a disturbing trend that should be carefully considered by the full court.

The threshold requirement that a defendant demonstrate a "need" for information concerning the exact location of an observation post has become unfairly and unnecessarily burdensome. For sixteen years, defendants seeking to overcome this threshold burden have hit an ever expanding brick wall, while the most important test, the test that fairly and equitably balances the interests of both parties, has been overlooked by us. The Supreme Court case of *Roviaro* provided unambiguous guidelines which we adopted as the foundation of our observation post privilege law. Those guidelines employ the terms "relevant and helpful" and not the word "impossible." Furthermore, *Roviaro* calls for a balancing test which we simply do not apply. Whether this is appropriate or not is a question for the full court. We, therefore, respectfully suggest that a rehearing en banc might be appropriate to consider the Supreme Court's directive concerning an analogous qualified privilege for identity of observation post locations and the question of whether our case law adheres to those requirements before remanding, if need be, for reconsideration.

*Affirmed.*