**Julian C. BUENO, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 97–CF–1759.**

District of Columbia Court of Appeals.

April 19, 2002.

BEFORE: WAGNER, Chief Judge; TERRY, STEADMAN, SCHWELB, FARRELL, RUIZ,* REID*, GLICKMAN, and WASHINGTON, Associate Judges.

O R D E R

PER CURIAM.

On consideration of appellant's petition for rehearing or rehearing en banc, appellee's opposition thereto, notice of consent of the parties for the Public Defender Service to participate as amicus curiae, consent of appellant for entry of appearance by Public Defender Service as amicus curiae and filing of brief, the memorandum of Public Defender Service as amicus curiae in support of petition, and the letter pursuant to Rule 28(k) from the Public Defender Service, it is

ORDERED that the Clerk is directed to enter the appearance of the Public Defender Service as amicus curiae and to file the lodged memorandum of the Public Defend-

er Service as amicus curiae in support of petition. It is

FURTHER ORDERED by the merits division* that the petition for rehearing is denied; and it appearing that the majority of the judges of this court has voted to deny the petition for rehearing en banc, it is

FURTHER ORDERED that the petition for rehearing en banc is denied.

Senior Judge MACK was a member of the merits division in this matter. She retired from the court on December 1, 2001, and did not participate in the consideration of the petition for rehearing.

Associate Judges RUIZ, REID, GLICKMAN and WASHINGTON would grant rehearing en banc.

Statement of Associate Judge GLICKMAN, with whom Judge RUIZ joins:

I would grant appellant's petition for rehearing en banc. The government's sole eyewitness at trial, Officer Garner, testified that she saw appellant sell drugs as she watched him through binoculars from a secret observation post. This testimony was the only evidence that linked appellant to the crime. Appellant moved for disclosure of the location of the observation post in order to cross-examine Officer Garner effectively about her ability to observe him. In support of the motion, a defense investigator testified that walls, buildings, trees and other obstacles in the relevant area obstructed the officer's view of appellant from most, if not all, possible vantage points in the vicinity. The government opposed the requested disclosure, invoking the so-called "observation post privilege." The trial court upheld the assertion of privilege. The location of the observation post was not disclosed, appellant could not use that information to test Officer Gar-

ner's ability to observe him, and he was convicted.

On appeal, a division of this court reluctantly affirmed. The division deemed itself bound by our precedents to hold that appellant made an insufficient threshold showing of need for disclosure of the location of the observation post. The division therefore did not undertake to evaluate whether any countervailing need for continued secrecy was shown, nor whether any such need outweighed the defendant's need for disclosure. The division appreciated, however, that our precedents and its holding in this case are in conflict with *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court decision that recognized a qualified "informer's privilege" (on which the observation post privilege is modeled), and with *United States v. Foster*, 300 U.S.App. D.C. 78, 81, 986 F.2d 541, 544 (1993), "the leading case on the issue of observation post privilege" in the D.C. Circuit. *Bueno v. United States*, 761 A.2d 856, 863 (D.C.2000).[1] The division unanimously urged the full court to rehear this case en banc to consider whether we have imposed an unconstitutionally high burden on the defense to show need for disclosure, without regard for the strength of the public interest in continued secrecy, in order to overcome the observation post privilege. *Id.* at 864.

I agree with the division that en banc reconsideration is necessary, and appropriate on the facts of this case, to bring this court's observation post jurisprudence into line with the requirements of the Sixth Amendment. In *Roviaro*, the Supreme Court said that the privilege to withhold the identity of an informant "must give way" when the information sought "is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause." *Id.*, 353 U.S. at 60–61, 77 S.Ct. 623. The "public interest in protecting" the confidentiality of an informant or a secret observation post must be balanced "against the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. 623. This court initially adhered to these principles when it first held that "the qualified privilege to withhold the exact location of an observation post may, under some circumstances, justify the court's refusal to allow cross-examination on that point at trial." *Thompson v. United States*, 472 A.2d 899, 900 (D.C.1984). In that case, we followed *Roviaro* and articulated a two-part test for determining whether to uphold the privilege:

> To overcome the privilege, a defendant "should ordinarily show that he needs the evidence to conduct his defense and that there are no adequate alternative means of getting at the same point." *United States v. Harley*, 221 U.S.App. D.C. 69, 71, 682 F.2d 1018, 1020 (1982). The trial court should then balance the defendant's interest in disclosure against the government's interest in continued secrecy and rule in accordance with " 'the fundamental requirements of fairness.' " *Id.* (quoting *Roviaro v. United States*, 353 U.S. 53, 60, 77 S.Ct. 623, ... (1957)).

*Thompson*, 472 A.2d at 900–901.

The threshold showing of relevance and need that the Supreme Court and this court envisioned serves to weed out requests for disclosure where the location of an observation post is of tangential importance—for example, where the prosecution

---

1. Appellant and *amicus curiae* the Public Defender Service suggest that our cases also are in conflict with the weight of authority in other jurisdictions that have considered the observation post privilege, and with more recent Supreme Court decisions regarding privileges and the scope of the Sixth Amendment right of confrontation.

does not rely on the testimony of the surveillance officer. But the threshold surely is met where, as in this case and in *Foster, supra,* the linchpin of the prosecution case is the testimony of that officer, and cross-examination of that officer's claimed ability to observe depends crucially on knowing where the witness was located:

> The more important the witness to the government's case, the more important the defendant's right, derived from the Confrontation Clause of the Sixth Amendment, to cross-examine the witness.... The defense understandably wanted to cross-examine [the officer] about his estimate of the distance between him and [the defendant] and the angle of his view and his testimony that nothing blocked his line of sight. Without knowing the location of the observation post, the defense could not effectively probe the officer's memory or veracity about these subjects. The right of the defense to engage in such lines of inquiry is at the heart of our system of criminal justice.

*Foster,* 300 U.S.App. D.C. at 80–81, 986 F.2d at 543–44, *quoted in Bueno,* 761 A.2d at 863.

The division came to a different conclusion in this case because it was constrained by decisions subsequent to *Thompson* in which other divisions of this court raised the threshold showing of need required of the defense. In *Anderson v. United States,* 607 A.2d 490 (D.C.1992), the court held that "the defendant is obliged to show not only that there are locations in the area from which the view is impaired or obstructed, but also that there is some reason to believe that the officer was making his observations from such a location." *Id.,* 607 A.2d at 497. In *Carter v. United States,* 614 A.2d 913, 916 (D.C.1992), the court candidly acknowledged "that requiring a defendant to produce evidence to discredit the officer's assertion about his observations creates a heavy burden. But that heavy burden is exactly what we intended in *Anderson.*"

With respect to my colleagues, I think the establishment of such a "heavy burden" misconceives the purpose of the threshold showing, sets the bar unrealistically high, is inconsistent with *Roviaro,* and unduly restricts the defendant's Sixth Amendment right of confrontation through cross-examination. The majority opinion in *Anderson* suggested that if defense counsel "is aware of actually or arguably obstructed locations, for example, he may inquire of the officer, indirectly or even directly, whether the observation post was located in any of them." *Id.* This suggestion is impractical at best. In the first place, the trial court reasonably might sustain a government objection to such inquiry precisely because it would threaten ("indirectly or even directly") to reveal the location of the observation post. Even if that obstacle can be surmounted, such questioning is inevitably hit-or-miss, little better than guesswork, if only because it is unrealistic and unfair to expect the defense to be able to identify *all* the obstructed vantage points in the relevant area. Moreover, as the majority in *Anderson* conceded, "[i]f ... the officer unambiguously testifies that he was not in any of the impaired locations, and if his testimony to that effect is credited by the court, then it will ordinarily be difficult if not impossible, absent other indicia of unreliability, for the accused to sustain his threshold burden, for there will be no reason for the court to believe that the officer's view was obstructed." *Id.* This is not persuasive, for the inability to cross-examine the officer effectively by other means only heightens the defendant's need to know where the officer was located. *See Thompson,* 472 A.2d at 900 (stating that "defendant should ordinarily show that he needs the evidence

to conduct his defense *and that there are no adequate alternative means of getting at the same point*")(emphasis added)(internal quotation marks and citation omitted). "A basic function of cross-examination is to explore credibility, ... and counsel therefore properly uses it as an exploratory tool." *Hicks v. United States,* 431 A.2d 18, 21 (D.C.1981) (citing, *inter alia, Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). Thus, as the D.C. Circuit put it, "[i]t is no answer to say ... that the defense failed to cast substantial doubt on the accuracy of [the officer's] testimony. Creating such doubt would have been one of the objectives of cross-examination following revelation of the observation post." *Foster,* 300 U.S.App. D.C. at 81, 986 F.2d at 544.

I fully appreciate that in any given case there well may be compelling reasons not to disclose the location of an observation post. Depending on the circumstances, "[i]f an observation location becomes known to the public at large, its value to law enforcement probably will be lost. The revelation, moreover, may jeopardize the lives of police officers and of coopera-

tive occupants of the building." *Hicks,* 431 A.2d at 21. In such circumstances, it may be appropriate to sustain the government's invocation of the observation post privilege, despite a legitimate need for disclosure on the part of the defendant, "as long as confidentiality does not jeopardize the fairness of the proceedings." *Id.* (citations omitted). That, according to *Roviaro* and *Thompson, supra,* is the critical inquiry— whether the public interest in confidentiality outweighs the defendant's legitimate interest in disclosure and the requirements of basic fairness. It is a fundamental mistake to avoid conducting that inquiry by requiring the defendant to pass an unduly stringent threshold test. We have made that mistake, and we should grant the petition for rehearing en banc in order to rectify it.