**Millard A. HICKS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 80–714.**

District of Columbia Court of Appeals.

Submitted Jan. 22, 1981.

Decided May 20, 1981.

---

1. *See United States v. Coggins*, 398 F.2d 668 (4th Cir. 1968) (per curiam).

Vincent A. Jankoski, Washington, D.C., appointed by this court, was on the brief for appellant.

Charles F. C. Ruff, U.S. Atty., and John A. Terry, and Karen J. Krug, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before KELLY, HARRIS and FERREN, Associate Judges.

FERREN, Associate Judge:

Having denied a Motion to Suppress Physical Evidence, the court in a non-jury trial found appellant, Millard A. Hicks, guilty of possession of heroin. *See* D.C. Code 1973, §§ 33–401(n), –402(a). The only question on appeal is whether the trial court erred in finding probable cause for appellant's arrest and search, without permitting defense counsel to cross-examine a police detective to the point of revealing the concealed location from which he had observed the transactions in drugs. We hold that (1) the government has a qualified privilege to withhold the location of a secret surveillance post; and (2) because the evidence adequately established probable cause

for arrest and failed to reveal a substantial reason to doubt the detective's testimony, the trial court properly exercised its discretion in refusing to allow cross-examination as to the precise location of the surveillance post in this case. Accordingly, we affirm.

## I.

Detective Roth Swope of the Metropolitan Police, assigned to the Third District Drug Enforcement Unit, was the only witness at the suppression hearing. He testified that on July 11, 1979, he had been "making observations from a concealed location," aided by seven-power field glasses, in the vicinity of the 1700 block of 14th Street for the purpose of detecting "trafficking of heroin." Approximately 40 feet away, he observed appellant hand money to two other individuals, later identified as Williams and Shelton, while the two were seated on a wall in the 1700 block of 14th Street. When a uniformed police officer came into the area, the three departed.

Soon thereafter, Detective Swope observed the three approximately 65 or 70 feet away in a parking lot that runs between the 1300 block of Riggs Place and the 1300 block of S Street. At some point, Shelton met with another unnamed individual in the parking lot. Detective Swope could not see what took place between these two because his view was obstructed. When Shelton walked away from this other individual, however, Detective Swope saw him hand Williams a small white object, similar in size and color to objects used in the sale of heroin which the detective had observed and recovered in the 14th Street area. Williams then handed the object to appellant. At this time, Detective Swope radioed other police officers; they arrested appellant in the 1800 block of 14th Street. The officers found heroin in a search incident to the arrest.

Detective Swope also testified about his experiences in observing narcotics traffic during his six years on the police force. He stated that he had participated in at least 50 arrests for heroin violations in this one-block area. In addition, he testified that he had seen this kind of transaction on at least 100 occasions, and that every time the small white object was recovered, it turned out to be heroin. The detective also stated that "the 1800 block of 14th Street is the top or one of top areas for retail sales of heroin in the Washington Metropolitan area."

On cross-examination, appellant attempted to establish that Detective Swope could not have witnessed both transactions: the initial payment of money and the later delivery of drugs. Several times appellant's counsel asked Swope to indicate on a diagram the point from which he had made his observations. The government objected to these questions. Each time the court responded that, although it was not absolutely precluding such inquiry, it would permit appellant to ask the officer's specific location only upon a showing of reasonable necessity.

In an effort to lay the necessary foundation, appellant's counsel asked Detective Swope to draw a diagram of the scene. Counsel established through the detective's testimony that a five-foot wall separated the two places where the transactions had taken place. Detective Swope could not remember whether cars had been parked in the lot where the second exchange had occurred. The detective also testified that there were several buildings in the area, the tallest of which was approximately six stories high. Counsel then asked the officer if he had made his surveillance from this building. The government objected and the court responded as follows:

> [W]hat you're trying to do is pin down the exact location in which the Officer made his observation. You're wasting time doing that. I've told you that it appears to the Court that there appears to be no reasonable necessity in this case at this time for that information and that ruling is on the record. Now there's no point in trying to get around it! I mean you're just wasting your time doing that.

The trial court rejected appellant's argument that the five-foot wall and other obstacles in the area made it impossible for Detective Swope to observe both transac-

tions: "[T]he Court finds the Government's witness in this matter in his testimony of his observation to be credible and the Court credits his testimony as to his observations." Accordingly, the court denied appellant's motion to suppress the narcotics.

Six months later in a non-jury trial, the court found appellant guilty of possession of heroin. *See* D.C.Code 1973, §§ 33–401(n), –402(a). The court imposed a one-year prison sentence, suspended its execution, and placed appellant on 18-months' probation. This appeal timely followed. *See* D.C.Code 1973, § 11–721(a)(1); D.C.App.R. 4 II(b)(1).

## II.

The first question is whether (and, if so, to what extent) the government has a privilege to withhold the location of a secret surveillance position. We conclude that there is such a privilege and that the trial court, in the exercise of sound discretion, is to determine whether in a particular case the privilege must yield to the defense right of cross-examination.

The Sixth Amendment establishes the right of every defendant in a criminal prosecution "to be confronted with the witnesses against him." Inherent in the right of confrontation is the right to cross-examine a witness. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974); *Alford v. United States*, 282 U.S. 687, 691, 51 S.Ct. 218, 219, 75 L.Ed. 736 (1931); *Springer v. United States*, D.C. App., 388 A.2d 846, 854 (1978). Beyond the constitutional minimum, however, the trial court has discretion to decide the extent and scope of cross-examination. *Alford, supra*, 282 U.S. at 694, 51 S.Ct. at 220; *Springer, supra*, at 854.

A basic function of cross-examination is to explore credibility, *Davis, supra*, 415 U.S. at 316, 94 S.Ct. at 1110; *Alford, supra* 282 U.S. at 692, 51 S.Ct. at 219, *see generally* McCormick on Evidence § 29 (2d ed. 1972 &

Supp.1978), and counsel therefore properly uses it as an exploratory tool. *See, e. g., Alford, supra* 282 U.S. at 692, 51 S.Ct. at 219; *United States v. Fowler*, 151 U.S.App. D.C. 79, 81, 465 F.2d 664, 666 (1972). *See generally* McCormick, *supra* § 29, at 58–59. Exploratory cross-examination may be especially important because of the limitations on pretrial criminal discovery. *See Fowler, supra* at 81, 465 F.2d at 666.

The right to cross-examination notwithstanding, courts long have recognized an "informant's privilege," which allows the government to withhold the identities of persons who furnish information to law enforcement officers about the commission of crimes, as long as confidentiality does not jeopardize the fairness of the proceedings. *See, e. g., McCray v. Illinois*, 386 U.S. 300, 305, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62 (1967); *Roviaro v. United States*, 353 U.S. 53, 59–61, 77 S.Ct. 623, 627–628, 1 L.Ed.2d 639 (1957); *Hooker v. United States*, D.C. App., 372 A.2d 996, 997 (1977); *Savage v. United States*, D.C.App., 313 A.2d 880, 884 (1974).[1] *See generally* 8 Wigmore on Evidence § 2374 (McNaughton rev. 1961 & Supp.1980).

Law enforcement interests in surveillance positions are analogous to those concerning informants. If an observation location becomes known to the public at large, its value to law enforcement probably will be lost. The revelation, moreover, may jeopardize the lives of police officers and of cooperative occupants of the building. These potential consequences mandate the same qualified testimonial privilege regarding surveillance positions as the protection given to police informants.

The question in each case, then, becomes whether fairness requires that the government's privilege yield to the defense right of cross-examination. Given the circumstances, the trial court must balance the public interest in legitimate criminal surveillance against the defendant's right to

---

1. *Cf. United States v. Crumley*, 565 F.2d 945, 950–51 (5th Cir.1978) (government witness need not reveal secret location of "track sheet," computer printout of identification numbers of vehicle parts, when defense fails to show mate-

riality); *Gurleski v. United States*, 405 F.2d 253, 266 (5th Cir.1968) (same; location of secret identification marks on automobile), *cert. denied*, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969).

cross-examine government witnesses and exercise its sound discretion whether to permit withholding of the information. Cf. *United States v. Anderson*, 509 F.2d 724, 729 (9th Cir.) (trial court's determination whether to require disclosure of identity of government informant at probable cause hearing is "a matter of discretion"), *cert. denied*, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975).[2]

■ A threshold consideration in making this determination is whether the issue before the court is probable cause for an arrest and search, *see McCray, supra*, 386 U.S. at 305, 87 S.Ct. at 1059, or the ultimate guilt or innocence of the defendant. *See Roviaro, supra* 353 U.S. at 64–65, 77 S.Ct. at 629–630, note 2 *supra*. When the question is probable cause, the court should consider, among other pertinent concerns, whether the defense has established that the location of the surveillance post is a material and relevant issue;[3] whether the evidence supports a finding of probable cause;[4] and whether the evidence creates a substantial

**2.** The Supreme Court announced such a balancing test in *Roviaro, supra* 353 U.S. at 62, 77 S.Ct. at 628 in holding that the government must disclose to the defense at trial the identity of a particular informer who was the only witness (other than the defendant) in a position to refute the government's case. *See id.* at 64–65, 77 S.Ct. at 629–630.

Ten years later in *McCray, supra*, the Supreme Court sustained the trial court's refusal to order disclosure of a police informant at a probable cause hearing. *See id.* 386 U.S. at 305, 87 S.Ct. at 1059. The Court distinguished *Roviaro, supra*:

> When the issue is not guilt or innocence, but as here, the question of probable cause for an arrest or search, the Illinois Supreme Court has held that police officers need not invariably be required to disclose an informant's identity if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant. [*McCray, supra* at 305, 87 S.Ct. at 1059 (footnote omitted)].

The Court found no basis in the Due Process Clause of the Fourteenth Amendment or in the Sixth Amendment right of confrontation to strike down the Illinois rule. *See id.* at 313–14, 87 S.Ct. at 1063–1064.

In exercising discretion whether to permit cross-examination about the witness' concealed location, the trial court is not limited to the testimony in open court. For example, one way for the court to protect the government's privilege, while assuring itself that the police observer did—or did not—have an unobstructed view, would be to conduct an *in camera* proceeding at which the government informs the court of the secret location. *Cf. Alderman v. United States*, 394 U.S. 165, 182 n.14, 89 S.Ct. 961, 971 n.14, 22 L.Ed.2d 176 (1969) (acknowledges use of *in camera* inquiry in informant context); *United States v. Freund*, 525 F.2d 873, 877–78 (5th Cir.) (remand for *in camera* hearing regarding need to disclose identity of informant to determine permissibility of border stop), *cert. denied*, 426 U.S. 923, 96 S.Ct.

2631, 49 L.Ed.2d 377 (1976); *Anderson, supra* at 730 (trial court did not abuse discretion in holding *in camera* hearing regarding basis of informant's knowledge in order to determine probable cause for arrest); *United States v. Hurse*, 453 F.2d 128, 131 (8th Cir.1972) (remand for *in camera* disclosure of identity of informant in order to determine probable cause for entry of home and arrest), *cert. denied*, 414 U.S. 908, 94 S.Ct. 1245, 38 L.Ed.2d 146 (1973).

The court however, need not hold such an inquiry sua sponte. *Cf. United States v. Alexander*, 559 F.2d 1339, 1344 (5th Cir.1977) (trial court is not required sua sponte to order *in camera* hearing to determine whether informant's identity need be discussed), *cert. denied*, 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1978).

**3.** *Cf. Crumley, supra* at 950–51 (government witness need not disclose location of "track sheets" at trial when defense fails to establish materiality); *Alvarez v. United States*, 525 F.2d 980, 982 & n.6 (5th Cir.) (same; identity of informant), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976); *Gurleski, supra* at 266 (same; location of identification marks).

**4.** *Compare McCray, supra*, 386 U.S. at 313, 87 S.Ct. at 1063 (when arresting officers testified under oath, in open court, subject to cross-examination regarding informer's statements and reliability, and trial court was satisfied with their veracity, court properly exercised its discretion to respect informer's privilege) *and United States v. Santarpio*, 560 F.2d 448, 453 (1st Cir.) (when trial court had no reason based on agent's testimony or affidavits to question reliability of informants, *in camera* identification of informants not necessary), *cert. denied*, 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977) *with Freund, supra* at 877–78 (remand for *in camera* hearing regarding possible conflict between informant-witness' recollection and arresting officer's testimony and need for disclosure of identity to determine permissibility of border stop) *and Hurse, supra* at 131 (remand for *in camera* disclosure of identity of

doubt about the credibility of the observer.[5] We turn to the facts of this case.

### III.

 In the present case, we perceive no abuse of discretion in the trial court's refusal to permit defense counsel to elicit on cross-examination of Detective Swope the location of his point of surveillance.

The question at the suppression hearing was whether the police had probable cause to arrest and search appellant. Defense counsel established that the location of the surveillance post was material to this issue by eliciting testimony suggesting that Detective Swope may have had an obstructed view of half the narcotics transaction.

The trial court found Detective Swope's testimony altogether credible. His testimony on cross-examination established that there was at least one building in the immediate area, and perhaps others, that were tall enough to provide a clear view of the transactions at issue. The detective's candid testimony about the obstruction of his view between the time appellant handed over money and the time soon thereafter when he received the white object did not detract from the sufficiency or credibility of his testimony for probable cause purposes.

Appellant's counsel had ample opportunity to question Detective Swope about the details of the drug buy, with the exception of the exact location of the surveillance post. Because the government was relying on first-hand police observation of all transactions suggesting probable cause, not on hearsay from an informant, defense counsel was in a position to make more effective use of cross examination than is common in the informant cases. Defense counsel nonetheless failed to elicit any irreconcilable inconsistencies in the detective's testimony or any independent reason to discredit him.[6]

Because the evidence supports the trial court's finding of probable cause and defense counsel failed to raise any substantial doubt about Detective Swope's truthfulness, the trial court properly limited cross-examination about the location of the surveillance post. The judgment of conviction is accordingly

*Affirmed.*

---

informant in order to determine probable cause for entry of home and arrest based on untested tip).

**5.** *See* note 4 *supra.*

**6.** Defense counsel did not request that the court pursue his concern through *in camera* inquiry. *See* note 2 *supra.*