Recco M. VALENTIN, Appellant,

v.

UNITED STATES, Appellee.

No. 09–CF–354.

District of Columbia Court of Appeals.

Argued Feb. 23, 2011.

Decided March 17, 2011.

Abigail Askew, for appellant.

Anne Y. Park, Assistant United States Attorney, with whom Ronald C. Machen, Jr., United States Attorney, and Elizabeth Trosman, Chrisellen R. Kolb, and Steven E. Swaney, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, and REID and FISHER, Associate Judges.

WASHINGTON, Chief Judge:

Recco Valentin appeals from his convictions on two counts of distribution of co-

caine and one count of possession with intent to distribute cocaine, all in violation of D.C.Code § 48–904.01(a)(1) (2001). Valentin raises two issues on appeal, challenging: (1) the trial court's denial of his motion to compel disclosure of the location of the secret observation post from which officers observed Valentin committing the crimes; and (2) the trial court's failure to require the government to turn over alleged Jencks[1] material requested by Valentin. We affirm all three convictions.

### I.

In the afternoon on December 28, 2007, Metropolitan Police Officers Jason Ross and Christopher Cartwright, who were in an undisclosed observation post, observed Valentin engage in what the officers believed to be two separate hand-to-hand drug transactions on the 1300 block of Riggs Street, Northwest. First, Valentin appeared to sell drugs to a woman later identified as Jeanette Ware, and second, he appeared to sell drugs to a man later identified as Miguel Quezada. Based on those events, Valentin was convicted by a jury of the three aforementioned charges and now appeals.

Prior to trial, the trial court held a hearing on Valentin's motion to compel the government to disclose the precise location of the observation post. At that hearing, Officer Cartwright testified regarding the two officers' observations. The officers observed Valentin standing in an area known for drug trafficking and then saw Ware enter the block. Ware and Valentin met at the mouth of an alley where Officer Ross saw them exchange items in a hand-to-hand transaction, after which Ware left the block and Ross saw Valentin counting money. Ross put out a broadcast lookout for Ware, who was apprehended nearby; a search of Ware revealed two blue ziplock bags containing cocaine.

After the Valentin–Ware encounter ended, Cartwright saw Quezada enter the block, and Valentin met him at the mouth of the same alley. There, Valentin knelt down near a bush and retrieved something, after which he and Quezada engaged in a hand-to-hand transaction similar to the exchange with Ware. Thereafter, Ross again saw Valentin counting money. One of the officers broadcast a lookout for Quezada, who was arrested nearby in possession of two more blue ziplock bags containing cocaine. Valentin began to leave the block at this time, and Officers Ross and Cartwright put out a broadcast of his description and left the observation post to follow him. After they saw the arrest team apprehend Valentin and identified him as the individual they had observed, Ross and Cartwright returned to the block and retrieved a paper bag from the bush; inside the bag, they found twenty-six blue ziplock bags containing cocaine.

On cross-examination at the hearing, Cartwright testified as to many of the details of the officers' observations but did not disclose the precise address of the observation post. He testified as to the side of the block the officers were on, the side of the block Valentin was on, the distance between the officers and Valentin, the presence of trees and cars on the street, and the fact that the observation post was elevated an undisclosed height above street level. Cartwright also stated that the officers did not use any visual aids and that the post was indoors, requiring the officers to look through a closed glass window to see Valentin. However, their view was not obstructed. Cartwright said that it was "possible" that he briefly lost

1. *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); *see* Jencks Act, 18 U.S.C. § 3500 (2006); Super. Ct. Crim. R. 26.2 (implementing Jencks Act).

sight of Valentin at certain times but that he could not go into any more detail since to do so would risk disclosing the location of the observation post. After hearing argument from both sides, the trial court then engaged in an *ex parte* bench conference with the prosecutor, who disclosed to the trial court the exact location of the observation post and detailed his reasons for opposing disclosure of that location to Valentin. The trial court then denied the motion to compel disclosure of that precise location.

## II.

Valentin's primary challenge on appeal is that the trial court abused its discretion by refusing to require the government to disclose the exact location of the observation post from which Cartwright and Ross observed Valentin sell cocaine. Particularly in light of the fact that the trial court reviewed the location *in camera*, we are satisfied that it did not abuse its discretion, and we therefore deny Valentin's challenge on this issue.

 This court and others "long have recognized" an "'informant's privilege,' which allows the government to withhold the identities of persons who furnish information to law enforcement officers about the commission of crimes, as long as confidentiality does not jeopardize the fairness of the proceedings." *Hicks v. United States,* 431 A.2d 18, 21 (D.C.1981) (citing, *inter alia, Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)). In *Hicks,* we extended that privilege to permit the government to withhold disclosure of the precise location of secret law enforcement observation posts for a number of reasons:

> If an observation location becomes known to the public at large, its value to law enforcement probably will be lost. The revelation, moreover, may jeopard-

ize the lives of police officers and of cooperative occupants of the building. These potential consequences mandate the same qualified testimonial privilege regarding surveillance positions as the protection given to police informants.

*Id.* The privilege to withhold the location is not absolute, however, and the trial court must balance the competing interests of the government and the defendant in non-disclosure and disclosure, respectively, by engaging in a two-step inquiry. *Bueno v. United States,* 761 A.2d 856, 859 (D.C. 2000); *Anderson v. United States,* 607 A.2d 490, 496 (D.C.1992).

 First, "the defendant must make a threshold showing of need for the information; he must establish 'that he needs the evidence to conduct his defense and that there are no alternative means of getting at the same point.'" *Anderson, supra,* 607 A.2d at 496 (quoting *Thompson v. United States,* 472 A.2d 899, 900 (D.C. 1984)). A defendant's need is not demonstrated merely by showing that "there are locations in the area from which the view is impaired or obstructed"; rather, the defendant must also demonstrate "that there is some reason to believe that the officer was making his observations from such a location." *Id.* at 497. When determining if a defendant has shown a need for disclosure of the precise location of the observation post, we have "encourage[d]" an *in camera* review of the location. *See, e.g., Carter v. United States,* 614 A.2d 913, 916–17 (D.C.1992) ("We think *in camera* review is a useful and relatively risk-free tool which should be used liberally by courts in situations such as the one presented here.").

 Second, after demonstrating need, the defendant must then establish "that, in spite of the possible peril to officers and civilians and the potential curtail-

ment of a legitimate means of law enforcement arising in the particular case, disclosure should nevertheless be required." *Id.* This determination requires the trial court to "balance the public interest in legitimate criminal surveillance against the defendant's right to cross-examine government witnesses...." *Hicks, supra,* 431 A.2d at 22. Factors relevant to the government's "countervailing interests" include "whether the observation post is still in use, whether cooperating civilians remain in jeopardy, and similar considerations." *Anderson, supra,* 607 A.2d at 496. Even when the government invokes its privilege against disclosing the location, the defendant is still "entitled to some leeway on cross-examination" regarding the observation post. *Id.* at 497. The defendant may inquire, for example, whether there were any objects at the scene that may have obstructed the officer's view, whether the location was elevated above street level, whether the conditions made visibility difficult, whether the officer used any visual aids such as binoculars, and whether the officer was looking through anything, such as a window. *See, e.g., Carter, supra,* 614 A.2d at 914. The trial court's ultimate decision as to whether the location should be disclosed depends upon the facts of each individual case and is left to the trial court's "sound discretion." *Hicks, supra,* 431 A.2d at 21.

■ In the instant case, the trial court properly exercised that discretion. It appropriately afforded Valentin broad latitude to develop the record as to why Valentin needed disclosure of the precise location of the observation post, permitting him to elicit information regarding the officers' distance from Valentin, lack of obstructions of view,[2] elevation at an undisclosed height above street level, and use of visual aids. Since such information was available to Valentin, we have no basis upon which to conclude that without knowledge of the precise location of the observation post, Valentin was unable to put on an adequate defense. Thus, Valentin failed to demonstrate the requisite need for the information required under *Hicks* and its progeny.

Despite Valentin's failure to satisfy the first of the two prongs of inquiry, the trial court nonetheless engaged in the balancing of interests before determining that disclosure was not required. During the *in camera* colloquy, the prosecutor disclosed the location of the observation post and described the government's interests in nondisclosure: concerns regarding the safety of cooperating citizens at that location as well as the desire of law enforcement to use that observation post in the future. While a defendant's need for disclosure may outweigh such demonstrated government concerns where the officers' observations are uncorroborated by additional evidence, *see People v. Knight,* 323 Ill.App.3d 1117, 257 Ill.Dec. 213, 753 N.E.2d 408, 417 (2001) (holding that the "defendant's need for the location information [was] so great" as to overcome the government's safety and law enforcement

---

**2.** To the extent that, at trial, additional testimony from the officers indicated that their view of Valentin was somehow obstructed due to the layout of the building in which they were stationed, Valentin raised no new objection to nondisclosure at trial and did not seek reconsideration of the pretrial denial of his motion to compel based on that new testimony. He therefore waived any further challenge based upon the new testimony elicited at trial. Nonetheless, since Ross and Cartwright testified that they had unobstructed views of Valentin's transactions with Ware and Quezada, respectively, we are satisfied that the information Valentin was able to elicit from the officers on cross-examination provided adequate protection of his confrontational rights.

interests because the officer's testimony was "uncorroborated" and "the case against [the defendant] turn[ed] almost exclusively on [the] officer's testimony"); *State v. Zenquis*, 131 N.J. 84, 618 A.2d 335, 337 (1993) (holding that withholding the location of the observation post was improper because "the case against [the defendant] turned almost exclusively on [the officer's] testimony"), such is not the situation here. In the instant case the evidence at trial provided ample corroboration of Cartwright's and Ross' observations: the officers located a stash of twenty-six blue ziplock bags of cocaine in the bush by the alley, precisely where the officers observed Valentin manipulate objects, and similar amounts of cocaine with similar levels of purity seized from Ware and Quezada were packaged in identical blue ziplock bags. This corroboration, as well as the level of detail elicited during the cross-examination of the officers, provides sufficient support for the trial court's finding, after balancing the competing interests, that "the defense has not been deprived of much and ... the security issues outweigh any concerns for the defendant...." Under the circumstances, we are satisfied that the trial court properly exercised its discretion by denying Valentin's motion to compel disclosure, and therefore his challenge on this issue fails.

### III.

Valentin also challenges the trial court's denial of his Jencks request that the government turn over all transcripts of testimony from Rene Dessin, the government's drug expert in Valentin's trial, from previous cases. Such transcripts, however, do not fall within the purview of the Jencks Act or Super. Ct.Crim. R. 26.2, our own rule implementing the Jencks Act. *See United States v. Malcolm,* 331 A.2d 329, 334 (D.C.1975). In *Malcolm,* after reviewing the legislative history of the Jencks Act, we held that because the documents requested in that case "had nothing to do with the activities alleged to have been participated in *by the defendant in this case,"* disclosure of those documents was unnecessary under Jencks. *Id.* (citation omitted, emphasis added). Here, the transcripts sought by Valentin similarly do not involve activities in which he allegedly participated on the date in question, and therefore disclosure of those transcripts is analogously unwarranted.

Additionally, because Dessin has likely testified countless times as a drug expert, the transcripts that potentially fall within Valentin's request likely encompass reams upon reams of testimony. In order for any of these transcripts to be relevant to Valentin's defense, we would have to posit a situation wherein Dessin testified that twenty-six individual bags of cocaine were consistent with personal use, rather than distribution, of narcotics.[3] Mindful of the Supreme Court's instruction that "the administration of the Jencks Act must be entrusted to the good sense and experience of the trial judges subject to appropriately limited review of appellate courts," *United States v. Augenblick,* 393 U.S. 348, 355, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969) (citation omitted), we refrain from second-guessing the trial court's exercise of its discretion in the face of such an improbable possibility. We therefore deny Valentin's challenge to this issue as well.

---

**3.** If such previous testimony from Dessin were to exist, the government would likely have been obligated to disclose that testimony to Valentin under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because it would constitute exculpatory evidence. Valentin raises no *Brady* challenge, however, and we therefore need not address that possibility in this case.

## IV.

For the foregoing reasons, we deny Valentin's appeal, and we affirm all of his convictions.

*Affirmed.*