Willis M. DANIELS and Antonio
Peoples, Appellants,

v.

UNITED STATES, Appellee.

Nos. 10–CF–737, 10–CF–834.

District of Columbia Court of Appeals.

Argued Sept. 21, 2011.

Decided Oct. 13, 2011.

Publication Ordered Nov. 23, 2011.

Before FISHER, Associate Judge;
REID, Associate Judge, Retired;
STEADMAN, Senior Judge.

### ORDER

PER CURIAM:

On consideration of the motion of the appellee, to publish this court's Memorandum Opinion and Judgment in the above matters filed October 13, 2011, and no opposition having been filed, it is

ORDERED that the motion is granted and the Clerk is directed to cause the decision to be published.

### MEMORANDUM OPINION AND JUDGMENT

FISHER, Associate Judge:

On September 24, 2009, appellants Willis Daniels and Antonio Peoples were arrested in connection with a "buy-bust" operation. A jury convicted Mr. Daniels of unlawful possession[1] and distribution[2] of cocaine and Mr. Peoples of unlawful distribution of cocaine. On appeal, Mr. Daniels challenges the trial court's refusal to instruct the jury on entrapment and its imposition of an enhanced sentence for having committed a crime while on release. Mr. Peoples raises multiple issues on appeal, most significantly a claim that the trial court abused its discretion in limiting cross-examination. We reject the challenges of both appellants and affirm their convictions.

### I. Factual Background

While working under cover on September 24, 2009, Metropolitan Police Department (MPD) Officer Darrick Wallace approached Mr. Daniels in the area of 6th and Q Streets in Northwest Washington, D.C., a high drug crime area. Officer Wallace asked Mr. Daniels if anyone was selling drugs. After some discussion, Mr. Daniels got in Officer Wallace's car and told him to drive to an apartment complex on 8th Street where, Mr. Daniels said, "they got fat ass twenties" (in other words, the officer explained, "[n]ice size twenty [dollar] rocks of crack cocaine"). On arrival, Officer Wallace gave Mr. Daniels three

---

1. D.C.Code § 48–904.01(a)(1) (2001).

2. D.C.Code § 48–904.01(d)(1) (2001).

$20 bills (the serial numbers of which had been previously recorded) and asked him to "get me two 20's."

Mr. Daniels took the $20 bills and crossed the street to the apartment complex, where he met Mr. Peoples, who was wearing a purple jacket. Mr. Peoples and Mr. Daniels had a brief conversation before walking into the building together. A second undercover officer, Clarence Brooks, watched from a distance of forty feet through the glass-paneled outer door as Mr. Peoples handed "a small object" to Mr. Daniels. Mr. Daniels then returned to Officer Wallace with a rock of cocaine which he broke into three parts, giving two parts to Officer Wallace and keeping one for himself. Officer Wallace asked whether Mr. Daniels had obtained the cocaine from "the dude in the purple jacket," to which Mr. Daniels replied, "Yes." Officer Wallace then gave a signal to Officer Brooks, who moved in with two other undercover officers and arrested Mr. Daniels and Mr. Peoples. In searches incident to arrest, officers recovered a small rock of cocaine and one of the pre-recorded $20 bills from Mr. Daniels, and the remaining two pre-recorded $20 bills from Mr. Peoples.

## II. Analysis of Mr. Daniels' Arguments

### A. Entrapment

 "A jury may be instructed on the affirmative defense of entrapment when there is sufficient evidence of government inducement of the crime *and* a lack of predisposition on the part of the defendant to engage in that criminal conduct." *Minor v. United States*, 623 A.2d 1182, 1187 (D.C.1993) (citing *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)) (emphasis in *Minor*). Mr. Daniels claims that the trial court erred by refusing to instruct the jury on

the defense of entrapment and by precluding him from arguing that defense during summation. We review the trial court's rulings *de novo. Appleton v. United States*, 983 A.2d 970, 977 (D.C.2009).

 The first element of entrapment, government inducement, requires us to determine whether there was sufficient evidence, viewed in the light most favorable to the appellant, that the government "implanted the criminal design in [the appellant's] mind[.]" *Williams v. United States*, 342 A.2d 367, 369 (D.C.1975) (citing *United States v. Russell*, 411 U.S. 423, 436, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)) (internal quotation marks omitted). Inducement has not occurred where the officer merely "offer[ed] the opportunity to buy or sell drugs...." *Minor*, 623 A.2d at 1188 (citing *Jacobson v. United States*, 503 U.S. 540, 549, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992)). Indeed, even "repeated government solicitations do not establish inducement unless the requests are coupled with 'persuasive overtures' ... [that] moved an otherwise unwilling person to commit a criminal act." *United States v. Hanson*, 358 U.S.App.D.C. 69, 75, 339 F.3d 983, 989 (2003) (internal editing, quotation marks, and citation omitted). These "persuasive overtures" must be sufficiently compelling "that a law-abiding citizen's will to obey the law could have been overborne." *United States v. Glover*, 332 U.S.App.D.C. 74, 79, 153 F.3d 749, 754 (1998) (internal quotation marks omitted). "Entrapment never exists as a defense unless the accused has been led to do a criminal act by the trickery or undue persuasion of an officer of the law." *Sherman v. United States*, 36 A.2d 556, 564 (D.C.1944).

The record here does not show "evidence of inducement beyond the ordinary opportunity to commit a crime and profit thereby." *Glover*, 332 U.S.App.D.C. at 80, 153 F.3d at 755. It is uncontested that

Officer Wallace initiated the conversation with Mr. Daniels by asking about the availability of cocaine. According to Mr. Daniels, Officer Wallace first asked simply whether Mr. Daniels had "anything." Mr. Daniels replied that he did not have drugs, asserting that he did not have the money to buy them. As Mr. Daniels began walking away, Officer Wallace called after him saying, "[L]ook here. If you can find some drugs I might make it worth your while." As Mr. Daniels testified, "That's a different situation. I needed some money anyway."

At this point, Mr. Daniels testified, he stopped and asked, "[H]ow much money you talking about giving me[?]" Officer Wallace made no specific price inducement, promising vaguely to "make it worth [his] while." Only after Mr. Daniels had agreed did Officer Wallace give Mr. Daniels $60 to buy $40 worth of cocaine, leaving $20 for Mr. Daniels to keep for himself. Then, Mr. Daniels took the lead. He located the cocaine dealer, conducted the purchase, and conveyed the cocaine to Officer Wallace. This "ready willingness to supply drugs once [the officer] contacted him belies [the appellant's] claim that his will was overborne by incessant government overtures." *Glover*, 332 U.S.App. D.C. at 79, 153 F.3d at 754. Although Mr. Daniels may have been encouraged by the opportunity to earn a sales commission, such motivation does not rise to the level of improper government inducement. *See United States v. McKinley*, 315 U.S.App. D.C. 95, 102, 70 F.3d 1307, 1314 (1995) ("[A]ny reward offered by [the officer] [that] was in the nature of providing appellant with the typical benefit of participat-

ing in this type of criminal enterprise . . . is not sufficient, by itself, to establish inducement."); *United States v. Diaz–Diaz*, 433 F.3d 128, 136 (1st Cir.2005) ("The promise of financial gain, . . . even if significant, is insufficient to demonstrate government inducement.").

■■■ Even if there were evidence that Mr. Daniels was improperly induced, that would not suffice. The entrapment defense is intended for the "protect[ion of] an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law." *United States v. Law*, 381 U.S.App.D.C. 270, 287, 528 F.3d 888, 905 (2008) (quoting *Jacobson*, 503 U.S. at 553–54, 112 S.Ct. 1535) (internal quotation marks omitted). "[T]he principal element in the defense of entrapment [i]s the defendant's predisposition to commit the crime." *Russell*, 411 U.S. at 433, 93 S.Ct. 1637. "Predisposition focuses on whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Minor*, 623 A.2d at 1188 (citing *Mathews*, 485 U.S. at 63, 108 S.Ct. 883) (internal quotation marks omitted).

■■■ The record here can only be read as showing that Mr. Daniels was predisposed to engage in the criminal conduct. Even if we focus on Mr. Daniels' testimony, we must consider his testimony as a whole,[3] and the record simply does not entitle appellant to an instruction on entrapment. *See Minor*, 623 A.2d at 1188.[4] Mr. Daniels testified at trial that he had no intention of buying or distributing drugs

---

3. In determining whether to instruct the jury on a defense theory, such as entrapment, a trial judge is not required to engage in "bizarre reconstructions of the evidence." *McClam v. United States*, 775 A.2d 1100, 1104 (D.C.2001).

4. Judge Epstein ruled: "I don't think even if the jury accepts Mr. Daniels' testimony that there's sufficient evidence of government inducement that goes beyond asking for help in getting drugs for $20.00. And I don't think there's evidence of a lack of predisposition."

before Officer Wallace initiated contact with him on that day. But Mr. Daniels also told the court that he had used cocaine for the past ten years or more, including on the day before he was arrested; knew where to buy cocaine; and was familiar with multiple drug dealers in the neighborhood. He further admitted to five previous drug convictions, including three distribution-related offenses.[5] Although Officer Wallace initiated the discussion, it was Mr. Daniels who suggested that they drive to 8th Street, because he knew it was a place where one could buy cocaine. Once there, according to Mr. Daniels' testimony, he walked directly to an apartment he had visited before, bought cocaine from the one individual he spoke with inside, returned to Officer Wallace, and completed the sale.

■ "[A] requested instruction is not appropriate if, as a matter of law, the defendant would not be entitled to the defense." *Mack v. United States*, 6 A.3d 1224, 1229 (D.C.2010) (citation and internal quotation marks omitted). Given the negligible evidence of government inducement and the powerful evidence of predisposition, "there was no basis in the evidence for an entrapment instruction and ... the trial court did not err in refusing to give one." *Minor*, 623 A.2d at 1188. Furthermore, because the legal elements of entrapment were not supported by the evidence, Mr. Daniels was not entitled to make such an argument during his summation. *See Hager v. United States*, 791 A.2d 911, 913 (D.C.2002) ("[C]ounsel can-

not make an argument unsupported by the evidence admitted at trial.").[6]

## B. Release Offender Sentencing Enhancement

■ Mr. Daniels also argues that the trial judge impermissibly sentenced him to an additional penalty under the release offender statute, D.C.Code § 23–1328, based on a determination of his status made by the judge instead of the jury. Because Mr. Daniels' counsel failed to raise any pertinent objection below, we review for plain error. *Thomas v. United States*, 914 A.2d 1, 8 (D.C.2006).

The issue of Mr. Daniels' release status arose at sentencing. Mr. Daniels declined to stipulate that he had been on release at the time of the offenses, and the jury had not heard evidence on the question. Rather than having the government call a court clerk as a witness, the trial judge consulted CourtView, the official online record system of the Superior Court, where he learned that the defendant had indeed been on release. Based on this finding beyond a reasonable doubt, the trial judge sentenced Daniels to a nine-month enhancement under D.C.Code § 23–1328.

■ Mr. Daniels has asked this court to determine whether there was "sufficient evidence produced in a timely manner to convict [him] of committing a crime while on release[.]" But this question misconstrues the issue. Under established precedent, the release offender statute does not create a crime of which one can be "convicted," but rather a sentencing enhance-

---

**5.** Mr. Daniels testified that he had been convicted in 1997 for attempted distribution of heroin, in 1989 for possession of heroin with intent to distribute, and in 1984 for distribution of heroin.

**6.** Judge Epstein aptly noted during the trial that "if there is no evidence from which a

reasonable jury viewing the evidence in the light most favorable to the defendant [could] find entrapment as a matter of law ... then for you to argue entrapment nonetheless would essentially be asking the jury to nullify the law."

ment. *Tansimore v. United States*, 355 A.2d 799, 803 (D.C.1976) (D.C.Code § 23–1328 "clear[ly] ... pertains only to the question of punishment rather than creating a new substantive offense."); *Speight v. United States*, 569 A.2d 124, 125 n. 4, 141 (D.C.1989) (en banc) (same).[7] Because § 23–1328 is a sentencing enhancement, and not a separate crime, a jury is not required to hear all factual questions underlying the additional penalty. *Tansimore*, 355 A.2d at 803 ("The fact that one was on release during the commission of a crime ... merely serves to enlarge the penalty and is, therefore, a sentencing matter within the exclusive jurisdiction of the trial judge.").[8]

▮ Nor did the trial judge err in taking judicial notice of the Superior Court's electronic records database, CourtView, in determining Mr. Daniels' release status. CourtView is the modern equivalent of the case jacket. "[I]t has long been settled that a court may take judicial notice of its own records, which is precisely what the trial court did here." *Washington v. United States*, 760 A.2d 187, 194 (D.C.2000); *accord*, *S.S. v. D.M.*, 597 A.2d 870, 880 (D.C.1991).[9]

## III. Analysis of Mr. Peoples' Arguments

### A. Cross–Examination on Police Methods

▮ Mr. Peoples' first argument on appeal is that the trial court abused its discretion by limiting the cross-examination of Officer Wallace regarding a signal he gave for the arrest team to move in. Officer Wallace preferred not to reveal details about the arrest signal "for safety reasons" and the court sustained the prosecutor's objection to the question. Mr. Peoples claims that such a limitation on his ability to cross-examine violates the Confrontation Clause of the Sixth Amendment. We disagree, as Mr. Peoples has failed to explain why the excluded testimony was relevant. *See Gibson v. United States*, 536 A.2d 78, 82 (D.C.1987) ("There is no constitutional right to present irrelevant evidence.").

At trial, Mr. Peoples argued that the nature of Officer Wallace's arrest signal "[g]oes to opportunity to observe." However, at no time did Officer Wallace claim to have observed Mr. Peoples' criminal behavior. Rather, he testified that he remained in the car while Mr. Peoples and

---

7. Indeed, when the trial judge addressed the question of release status, Mr. Daniels' counsel conceded that § 23–1328 is "a sentencing enhancement."

8. Appellant did not raise an objection based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), either at trial or on appeal. In any event, *Apprendi* does not apply in this case. Even with the sentencing enhancement, Mr. Daniels was only sentenced to a total of thirty-seven months of incarceration for illegal distribution, although the maximum statutory penalty is thirty years. *See* D.C.Code § 48–904.01(a)(2)(A) (2001). Because his "sentence does not exceed th[e] statutory maximum, his case presents no *Apprendi*-type Sixth Amendment violation," *R.W. v. United*

*States*, 958 A.2d 259, 267 (D.C.2008), and the trial judge properly conducted fact-finding on the question of appellant's release status. *See In re Sealed Case*, 345 U.S.App.D.C. 352, 354, 246 F.3d 696, 698 (2001) (*Apprendi* does not apply to an "enhancement that results in a sentence *within* the statutory range.").

9. In his brief, Mr. Daniels also requested to "join any relevant issues brought before the Court by co-appellant Antonio Peoples." However, Mr. Daniels failed to explain how these arguments apply to his circumstances, and his "adoption of the argument is insufficient to warrant relief." *Hammond v. United States*, 880 A.2d 1066, 1088 (D.C.2005). In any event, we later conclude that appellant Peoples is not entitled to relief, and Mr. Daniels fares no better on the same arguments.

Mr. Daniels "walked inside [a] gate[,] at which time they were out [of his] view." From that point it was Officer Brooks, not Officer Wallace, who followed the two appellants to the gate and observed the cocaine transaction between Mr. Peoples and Mr. Daniels.[10] Moreover, it was only after "the buy had been completed" and Mr. Daniels had returned to the car alone that Officer Wallace gave the arrest signal. Therefore, the nature of the signal was irrelevant to the officers' ability to observe Mr. Peoples at the time of the actual offense.[11]

## B. Other Arguments

 Mr. Peoples also challenges the trial court's refusal to allow him to recall Officer Brooks as a witness so that the defense might cross-examine him based on a photograph showing police officers and civilians on the scene after the arrest had taken place. Contrary to the appellant's assertion, the photograph is not relevant to Officer Brooks' possible misidentification of Mr. Peoples at the time of the offense. Although the photograph shows other individuals in the area, it was taken well after the criminal conduct had transpired. *See Gibson*, 536 A.2d at 82 (no right to present irrelevant evidence); *see also Brown v. United States*, 388 A.2d 451, 456 (D.C. 1978) (trial court has broad discretion concerning whether a witness may be recalled to the stand). Moreover, "reversal is warranted only when an exercise of discretion curtailing further cross-examination leads to demonstrable prejudice." *Coleman v. United States*, 515 A.2d 439, 450 (D.C. 1986). There was no such prejudice here.

The trial court permitted extensive cross-examination of Officer Brooks on the issue of possible misidentification. In addition, the photograph was later admitted; defense counsel questioned another officer using the photograph itself and displayed it to the jury during closing argument.

 Mr. Peoples next argues that the government failed to establish a proper chain of custody for the two pre-recorded $20 bills recovered from him in a valid search incident to arrest. This argument fails because the bills were "readily identifiable" by their serial numbers. *See In re D.S.*, 747 A.2d 1182, 1187 (D.C.2000). Rather than presenting a true chain of custody issue, Mr. Peoples' contention is better characterized as a challenge to the foundation for admitting the evidence. However, the government solicited testimony from officers that they prepared a pre-recorded funds sheet before arriving on the scene; recovered two bills from Mr. Peoples immediately following his arrest; and, upon comparison of the bills to the funds list, found a match. "[I]t is the trial court's responsibility to examine the testimony and determine whether the proper foundation has been laid for the exercise of discretion as to its admission[,]" *Jones v. United States*, 17 A.3d 628, 634 (D.C.2011) (citation omitted), and we find no abuse of discretion here.

 Finally, Mr. Peoples contends that the evidence is insufficient to sustain a conviction for distribution of cocaine. This argument has no merit. Once the jury has returned a verdict of guilt, we "view the

10. Mr. Peoples had ample opportunity to cross-examine Officer Brooks regarding his opportunity to observe, and did not ask him about the arrest signal.

11. Because we decide that the nature of the arrest signal was irrelevant to Mr. Peoples' defense, we do not reach the question posed

by the government of whether the observation post privilege (or law enforcement methods privilege) protects the information from disclosure. *See generally Valentin v. United States*, 15 A.3d 270, 273–75 (D.C.2011) (discussing the observation post privilege).

332

evidence in the light most favorable to the government[.]" *Phenis v. United States,* 909 A.2d 138, 163 (D.C.2006) (internal quotation marks and citation omitted). "[R]eversal is warranted only where there is no evidence upon which a reasonable mind could infer guilt beyond a reasonable doubt." *Id.* The record here easily supports the inference that Mr. Peoples unlawfully distributed a large cocaine rock to Mr. Daniels in exchange for the two pre-recorded $20 bills later recovered by the police from Mr. Peoples' pockets.

For the foregoing reasons, the judgment of the Superior Court is hereby

*Affirmed.*

